UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>JEFF MCGRAW | Case No. 23 CR 28<br><br>Emergency Judge<br>Thomas Durkin |

## GOVERNMENT'S EMERGENCY MOTION FOR REVOCATION OF THE MAGISTRATE JUDGE'S RELEASE ORDER

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully moves this Court, pursuant to 18 U.S.C. § 3145(a)(1), for an order revoking the release order entered on June 7, 2023, by the Honorable Magistrate Judge Young B. Kim.[1]

### INTRODUCTION

The government moves to revoke the June 7 release order because there is no condition or combination of conditions to reasonably assure defendant's appearance and the safety of the community.

In 2015, defendant was convicted of Reckless Discharge of a Firearm and sentenced to two years' probation. After being on probation for that conviction for ***a mere six weeks***, defendant was arrested on a murder charge. Defendant plead guilty to murder conspiracy and was sentenced to 14 years' imprisonment. He was released on parole on April 12, 2022, having served seven years of his sentence. Yet only ***three***

---

[1] Magistrate Judge Kim stayed entry of the order pending this appeal. Dkt. 49.

1

*months* into his parole, defendant was arrested in the present case after a domestic violence incident in which he broke his girlfriend's jaw and pointed a handgun at her and her mother, threatening to kill them both. The handgun—a Glock 9mm equipped with an auto-sear switch that renders it fully automatic—was in defendant's hand when law enforcement arrived and was recovered less than five feet from where defendant was standing after he was observed dropping it over a porch railing. A grand jury in this district charged defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Those facts alone warrant pretrial detention.

In addition to defendant's criminal history, his consistent failure to abide by terms of probation, and his conduct in the course of the present offense, defendant has also engaged in obstructive conduct. Since he was arrested in July 2022 and placed into IDOC custody on a parole violation, defendant has placed over 50 jail calls to the victim in this case, asking her to, among other things, convince her mother testify to the grand jury that she "was just mad," and never saw him with a gun. Such testimony, if given, would be in direct conflict with what the mother told law enforcement during her 911 call, what she told law enforcement immediately following defendant's arrest, and her sworn grand jury testimony.

Finally, roughly a week after defendant was transferred into federal custody, he got into a fight with another inmate. Defendant has a clear history of violence and flouting the rules without concern for the consequences. There is simply no reason to believe he will now change his ways.

Respectfully, Magistrate Judge Kim's June 7 release order, which provides for an unsecured bond of $10,000 and confinement in the home of a non-familial "aunt," is inadequate and is not grounded in the relevant statutory factors. For the reasons set forth below, the government respectfully asks this Court revoke Magistrate Judge Kim's release order and enter an order detaining defendant.

## BACKGROUND

**A. The Domestic Violence Incident and Arrest.**

**1. The Morning of July 14, 2022.**

On July 14, 2022, at around 7:14 a.m., Calumet City Police Department ("CCPD") received a 911 call from a woman reporting a domestic violence situation at her home. The woman caller asked that police be sent to her house because a man had hit her daughter and had a gun "in his hands." The woman stated that the man was dressed in "all gray," and had arrived in a black Lexus which was parked out front. She identified the man as her daughter's boyfriend, "Jeff McGree [sic]." The caller stated that her daughter needed medical attention. In the background, the daughter could be heard repeatedly yelling, "Go home!" The caller pleaded for the police to arrive quickly, exclaiming, "Please somebody come before we be dead!"[2]

At approximately 7:15 am, CCPD Dispatch radioed nearby patrol units, which responded less than two minutes after the call came in over the radio.

---

[2] The 911 call lasted approximately four minutes and 52 seconds, and police were on the scene for over a minute before it ended.

3

Upon arriving at the house, an officer observed defendant on the porch, and observed the defendant throw the gun into the bushes next to the porch. BWC footage captured the officer telling a colleague, "I watched him throw it over here," and telling defendant, "see, when you threw the gun, I watched you throw it." The officers recovered from the ground near the bushes a Glock 45 9mm equipped with a laser and auto-sear switch. A photo of the firearm as it was found is depicted below at **Figure 1**.

**Figure 1**



Defendant was placed under arrest and taken to CCPD headquarters.

After defendant was arrested, the officers interviewed the two women in the house. The mother stated that she was in the back of the house and heard her daughter scream and then ran toward the front door. The mother further stated that as she approached the front door, she saw defendant standing over her daughter who was on the ground with blood coming from her mouth. The mother stated that defendant then pulled out a handgun from his waistband, pointed it at both women,

4

and threatened to kill them. The mother said she locked the front door behind defendant and called 911. The daughter declined to give a statement.

## 2. State Proceedings.

The State of Illinois charged defendant with seven counts, including being an Armed Habitual Criminal (720 ILCS 5/24 1.7(a)); Felony Unlawful Possession or Use of a Machine Gun and Unlawful Possession of a Weapon by a Felon (720 ILCS 5/24-1.1-A); Possession of a Controlled Substance in Connection with a Crime of Domestic Violence (720 ILCS 570/402-C³); and Domestic Battery that Caused Bodily Harm (720 ILCS 5/12-3.2-A-1). Because he was on parole at the time of the offense, defendant was found to have committed a parole violation, and committed to the custody of the Illinois Department of Corrections ("IDOC").



---

³ A personal use quantity of cocaine was found inside defendant's Lexus. In a post-Miranda interview, defendant claimed the drugs, which were found in the center console of his vehicle, belonged to a friend. Defendant declined to provide the name of that friend.





### B. Defendant's Obstructive Conduct While in IDOC Custody.

After he was arrested, defendant was placed in IDOC custody for having committed a parole violation. During his time in IDOC custody, defendant kept close contact with the victim girlfriend, calling her over 50 times, and attempting to improperly influence her and her mother.

For example, according to a jail call recording, on October 31, 2022, defendant spoke to the victim, who informed him that she and her mother had recently been served with federal grand jury subpoenas.[5] Defendant guessed that federal law enforcement was involved, because the Glock recovered by CCPD "had a switch on it." Defendant told the victim that she "didn't have to say shit" and could assert her Fifth Amendment rights. Defendant further told the victim that her mother should

---

[5] The government can provide the Court with audio of defendant's jail calls, to include the October 31, 2022 call with the victim. All relevant jail calls have been produced to defendant's counsel.

tell the grand jury that she was "just mad," when she called 911, and that he never possessed a gun.

Even after he was charged in federal court, defendant has continued to attempt to contact the victim, with his most recent jail call (that the government is aware of) to her phone occurring on May 20, 2023.[6]

**C. Federal Proceedings**

On January 18, 2023, a grand jury in this district indicted defendant on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). Dkt. 1. Defendant had an initial appearance and arraignment before the Honorable Magistrate Judge Kim on February 3, 2023. Dkt. 13. During that proceeding, defendant's counsel asked that he be returned to state custody to finish out his parole violation, which was scheduled to expire on May 26, 2023, without prejudice to moving for bond later. Magistrate Judge Kim granted that request, and defendant was placed back into IDOC custody.

On May 16, 2023, the government moved for a writ of habeas corpus ad prosequendum, asking that defendant be returned to federal custody at the conclusion of his state parole violation. Dkt. 34. Defendant immediately moved for bond. Dkt. 35. Pretrial Services drafted a report on defendant, which has been provided to the Court. According to Pretrial Services' criminal records check,

---

[6] Defendant's previous murder conspiracy case also involved obstructive conduct, in that occasion by the defendant's mother, who was convicted of witness tampering and sentenced to a term of three years. In the present case, toll records indicate that defendant's mother has also called the victim's phone over a dozen times since the July 14, 2022 assault.

7

defendant, who is 29 years old, has a total of 21 arrests and at least 2 adult felony convictions. Specifically, defendant has the following convictions:

| Date | Conviction | Sentence |
|---|---|---|
| 3/19/2015 | Reckless discharge of a firearm | 2 years' probation |
| 7/24/2019 | Murder Conspiracy | 14 years' imprisonment |

Defendant served approximately seven years of his 14-year sentence for his Murder Conspiracy conviction. Specifically, defendant was in IDOC custody from the date of his arrest on May 7, 2015 to his release on parole on April 12, 2022.

In analyzing defendant's character and history, Pretrial Services cited the following factors as indicating that defendant poses a risk of nonappearance:

1. Unknown and unverified personal background information
2. New arrest while under supervision
3. Prior noncompliance with court supervision
4. Aliases or false identifications
5. History of failure to appear

With regards to the risk that defendant may pose a danger to the community, Pretrial Services highlighted the following factors:

1. Nature and circumstances of alleged instant offense
2. Prior federal felony convictions.
3. Pattern of [similar] criminal activity history
4. New arrest while under supervision
5. Violent behavior history
6. Prior noncompliance with court supervision
7. History of weapons use
8. History/charge involving sex offense/abuse
9. History/charge involving violence/battery

8

Despite these factors, Pretrial Services declined to issue a recommendation, because it was unable to interview defendant prior to his detention hearing. Defendant moved without objection to continue the hearing, and a bond hearing was scheduled for June 7, 2023.

### D. Defendant is Placed in Federal Custody and Gets into a Fight, Resulting in Injuries to His Leg.

After he was transferred to federal custody, defendant was sent to the Kankakee County Detention Center. On June 2, 2023, the defendant was involved in a fight with another inmate that resulted in defendant breaking his leg while jumping off a tier in the prison. Defendant received orthopedic surgery to his leg and was returned to Kankakee County.

### E. Pretrial Services' Addendum and Recommendation.

In advance of the bond hearing, Pretrial Services prepared an addendum on defendant.[7] In that addendum, Pretrial Services noted the following factors as posing a risk of nonappearance:

1. New arrest while under supervision
2. Prior noncompliance with court supervision
3. Aliases or false identifications
4. History of failure to appear
5. Prior noncompliance with court supervision
6. History of weapons use
7. History [of] charge involving violence/battery
8. Self reported substance use history
9. Self reported mental health history

---

[7] Both reports from Pretrial Services have been provided to the Court.

      10. Self report mental health history

Regarding the risk of a danger to the community, Pretrial Services cited the following factors:

1. Nature and circumstances of alleged instant offense
2. Prior felony convictions.
3. Pattern of similar criminal activity history
4. New arrest while under supervision
5. Violent behavior history
6. Prior noncompliance with court supervision
7. History of weapons use
8. History/charge involving sex offense/abuse
9. History/charge involving violence/battery

Despite these factors, Pretrial Services recommended that defendant be placed in home incarceration with location monitoring in the custody of an unrelated "aunt" ("E.M.") who lives in Buffalo Grove, Illinois. E.M. was interviewed by Pretrial Services and indicated that she was unwilling to post any property as collateral but was willing to "post $200 to $300 to secure the defendant's release." Addendum at 2.

**F. The June 7 Bond Hearing.**

At the June 7, 2023 bond hearing, defense counsel argued that defendant's prior criminal history was too remote and that he had significantly matured since his last conviction. Dkt. 52 at 3:3 – 4:1. Defense counsel further argued that the state of defendant's leg required better medical treatment than that available in detention. *Id.* at 5:18 – 6:17. Defense counsel argued for release on conditions and proposed E.M. as a third-party custodian. *Id.* at 4:12 – 5:7. E.M. was questioned by Magistrate

Judge Kim at the detention hearing, and she told the Court she was willing to serve as a third-party custodian. *Id.* at 7:17 – 11:11.

In response, the government stated its position that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. The government's argument focused on the nature and circumstances of the current charges—highlighting defendant's violent conduct assaulting his then-girlfriend and her mother—the defendant's prior history of nonappearance and noncompliance with court orders, and his obstructive conduct. *Id.* at 11:20 – 16:24.

In his ruling, Magistrate Judge Kim noted that "it is troubling based on what [the government] has described in terms of what took place on July 14, 2022, but the job of the court isn't to be punitive when it comes to bond hearings." *Id.* at 18:17 – 20. Magistrate Judge Kim further stated, "I'm not seeing any risk here in terms of Mr. McGraw absconding or ignoring court orders in terms of having to appear in court." Magistrate Judge Kim concluded that committing defendant into the custody of E.M. that would reasonably assure the appearance of the defendant and the safety of the community. *Id.* at 19:1-17. Magistrate Judge Kim ordered that defendant be released on the following relevant conditions: (1) a $10,000 unsecured bond; (2) E.M. acting as a third-party custodian; and (3) home incarceration with electronic monitoring at E.M.'s home. Dkt. 48 (release order). In the course of explaining the rationale for his ruling, Magistrate Judge Kim did not discuss defendants' criminal history or defendant's obstructive conduct.

Following Magistrate Judge Kim's oral ruling, the government moved to stay entry of the Court's order to allow the government to appeal the Court's decision. Magistrate Judge Kim agreed to stay entry of his Order until Friday June 9, 2018 at 12:00 p.m. to allow the government to appeal "with either the assigned District Judge or the Emergency Judge." *See* Dkt. 49. Upon the filing of the government's appeal, Judge Kim's order will be "stayed until further order of the court." *Id*.

The government now moves to revoke the release order, pursuant to 18 U.S.C. § 3145(a)(1).

## LEGAL STANDARD

Under the Bail Reform Act, the government may seek review of a magistrate judge's release order with the district court. 18 U.S.C. § 3145(a)(1). The district court reviews the release order *de novo* and need not defer to the magistrate judge's findings. *See United States v. Messino*, 842 F. Supp. 1107, 1109 (N.D. Ill. 1994). The district judge also has the discretion to receive additional evidence. *Id*. The court may review a transcript of the proceedings before the magistrate judge or it may hold a new hearing. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991).

## ARGUMENT

The government respectfully disagrees with Magistrate Judge Kim's ruling that a $10,000 unsecured bond, supervision by an unrelated third-party custodian, and electronic monitoring will reasonably assure the defendant's appearance and the safety of the community. The government asks this Court to revoke the release order because the nature and circumstances of the current offense, defendant's violent

12

criminal history, and his historic inability to abide by court orders means that no condition or combination of conditions can reasonably assure defendant's appearance and the safety of the community.

The factors a court must consider in determining whether to detain or release a defendant are set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Here, each of those factors weighs in favor of detention.

### A. The Nature and Circumstances of the Offense Charged.

The first factor the Court must consider is "the nature and circumstances of the offense charged," which includes "whether the offense involves . . . a firearm." 18 U.S.C. § 3142(g)(1). Defendant is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). Being a felon in possession of a firearm is a serious offense that poses a real danger to the community. This particular case is far more egregious than the standard felon-in-possession case. Here, the defendant was actively brandishing a loaded fully automatic firearm while assaulting two women—resulting in serious injuries to one, which required surgery. When defendant was locked out of the house and his girlfriend implored him to leave, defendant refused to do so. Defendant's violent and dangerous conduct warrants detention.

### B. The Weight of the Evidence.

The second factor is the weight of the evidence. 18 U.S.C. § 3142(g)(2). Here, the weight of the evidence is strong and supports detention. Both victims have testified in the grand jury that defendant assaulted his then-girlfriend and pointed a gun at her and her mother. Their testimony is corroborated by their contemporaneous 9-1-1 calls, the mother's initial statement to the police, and the observations of the officers upon their arrival. Furthermore, an officer arriving at the scene observed defendant with a gun, and a gun was recovered immediately next to the defendant. The weight of the evidence here supports detention.

### C. This History and Characteristics of the Person.

Third, the Court must consider the "history and characteristics of the person," including, among other things, his "character," "criminal history," "past conduct," and "whether at the time of the current offense or arrest, the person was on … parole." 18 U.S.C. § 3142(g)(3)(A) – (B). As noted above, the defendant has state convictions for Reckless Discharge of a Firearm and for Conspiracy to Murder, serious offenses reflective of defendant's violent nature.

These convictions are noteworthy not just for their nature, but for the short time between these convictions. Defendant was only on probation for the reckless discharge charge for six weeks when he was arrested on a murder charge. Defendant was on parole for only three months when he was arrested in the present case. Defendant's history of violent crime and his inability or unwillingness to comply with court orders when on probation and parole show that defendant refuses to be constrained by court order in posing a danger to the community.

Thus, the defendant's history demonstrates a pattern of violence and firearms use, both of which are (uncoincidentally) underlying the charge defendant currently faces and the nature of which indisputably poses a danger to the community.

### D. The Nature and Seriousness of the Danger to any Person or the Community that Would be Posed by Defendant's Release.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As discussed above, defendant has already severely injured his former girlfriend, and has since gone out of his way to maintain contact with her and attempt to influence her testimony and that of mother. The nature of the danger posed by the defendant is two-fold: first, defendant poses the danger of actual physical harm as shown by his conduct in this and prior cases; and second, defendant's release poses the danger of obstruction to this judicial process. Both of these are serious dangers the defendant's release would pose to the community. Defendant's pre- and post-arrest conduct shows that he is a danger to his victims and to the judicial process and that detention ss the only appropriate remedy.

### CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court revoke the release order entered by Magistrate Judge Kim on June 7, 2023.

Dated: June 9, 2023	Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:	*/s/ Brandon D. Stone*
Brandon D. Stone
Assistant United States Attorney

15

United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5361