**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | **23 CR 28** |
| | ) | **Honorable Edmond E. Chang** |
| **JEFF MCGRAW,** | ) | |
| *Defendant.* | ) | |

<u>**DEFENDANT, JEFF MCGRAW'S MOTION TO DISMISS THE INDICTMENT
ON SECOND AMENDMENT GROUNDS**</u>

NOW COMES the defendant, JEFF MCGRAW, by and through his attorney, YELENA

A. DOLGOSHEEVA, and respectfully moves this Honorable Court pursuant to Rule 12(b)(1) of

the Federal Rules of Criminal Procedure to dismiss the indictment against him. Mr. McGraw is

charged pursuant to 18 U.S.C. §922(g)(1) with possessing a firearm after sustaining a felony

conviction. As applied to the facts of this case, Section 922(g)(1) is unconstitutional and he is

therefore legally innocent of the crime charged. The Supreme Court's "text and tradition"

approach to the Second Amendment, outlined and explained in *Atkinson v. Garland*, No. 22-

1557, 2023 WL 4071542 (7th Cir. June 20, 2023), *Range v. Att'y Gen. United States of Am.*, 69

F.4th 96, 103 (3d Cir. 2023) (en banc) and *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.

Ct. 2111 (2022), compels the conclusion that §922(g)(1) is unconstitutional as applied to Mr.

McGraw and the Court should dismiss this case with prejudice.[1] On November 2, 2023, Judge

Robert W. Gettleman granted defendant's motion to dismiss the indictment stating that the "court

is unable to uphold § 922(g)(1) as constitutional due to <u>*Bruen's*</u> instruction that the government

---

[1]      "Federal Rule of Criminal Procedure 12(b)(1) permits pretrial motions raising 'any defense' that
can be adjudicated without a trial." *United States v. Stelmachowski*, No. 15 CR 339-1, 2018 WL
828078, at *6 (N.D. Ill. Feb. 12, 2018) (St. Eve, J.). Because of that, a defendant's as-applied
constitutional challenge to an indictment is properly raised as a motion to dismiss under Rule
12(b)(1). *Id.*

must provide evidence of a historical analogue that is both comparably justified and comparably burdensome of the right to keep and bear arms." *United States v. Prince,* 22-CR-240, 2023 U.S. Dist. LEXIS 196874, at \*30 (N.D. Ill. Nov. 2, 2023). On February 7, 2024, Judge Sara L. Ellis found in five separate cases § 922(g)(1) to be facially unconstitutional. *United States v. Neal,* No. 20 CR 335; No. 21 CR 52; No. 21 CR 631; No. 21 CR 636-3; No. 22 CR 380, 2024 U.S. Dist. LEXIS 26118 (N.D. Ill. Feb. 7, 2024). Counsel is aware that this Court has previously denied a similar motion, finding that the government "show[ed] that the felon dispossession statute is part of this country's historical tradition of firearm regulation." *United States v. Agee*, No. 21-CR-350, 2023 WL 6443924, \*15 (N.D. Ill. Oct. 3, 2023). Nonetheless, Mr. McGraw presents this motion to preserve this issue and respectfully requests this Court to reconsiders its position on the issue.

## PROCEDURAL BACKGROUND

On July 14, 2022, Mr. McGraw was arrested by the Calumet City Police Department Officers, and charged with state offenses. Based on the facts underlying July 14, 2022 arrest, on January 18, 2023, grand jury returned a single count indictment, charging Mr. McGraw with being a felon-in-possession of a firearm, in violation of 18 U.S.C. §922(g)(1). R. 1. Mr. McGraw's prior convictions consist of the following: reckless discharge of a firearm and conspiracy to murder.

On June 7, 2023, the Third Circuit became the first federal appellate court to hold 18 U.S.C. §922(g)(1) unconstitutional in an as-applied challenge. *See Range*, 69 F.4th 96. The *Range* opinion interpreted the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Subsequently, on June 20, 2023, the Seventh Circuit issued its opinion in *Atkinson v. Garland*, No. 22-1557, where it held that the government's

2

historical analysis of the constitutionality of Section 922(g)(1) fell "well short of *Bruen*'s demands." While *Atkinson* ultimately remanded the case to allow the government to attempt to develop more persuasive historical evidence, the decision also established that the government has so far failed to "affirmatively prov[e] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at *5 (quoting *Bruen*, 142 S. Ct. at 2127).[2]

Other courts recently held that 18 U.S.C. §922(g)(1) is unconstitutional. *See e.g., United States v. Bullock*, No. 18-CR-165-CWR-FKB, 2023 WL 4232309 (S.D.Miss. June 28, 2023); *United States v. Quailes,* 21-CR-176, 2023 U.S. Dist. LEXIS 147657 (M.D.Pa. Aug. 22, 2023); *United States v. Harper,* 21-CR-236, 2023 WL 5672311 (M.D.Pa. Sept. 1, 2023); *United States v. Forbis,* 23-CR-133-GFK (N.D. Okla. Aug. 17, 2023). For example, a court in the Southern District of Mississippi dismissed a felon-in-possession charge against a defendant previously convicted of aggravated assault, manslaughter, fleeing law enforcement and attempted aggravated assault (*Bullock*, 2023 WL 4232309, at *5 and fn. 2); and, a court in the Middle District of Pennsylvania dismissed a felon-in-possession charge against a defendant previously convicted of 13 felonies that included multiple "armed robberies and drug trafficking" crimes (*Harper,* 2023 WL 5672311, at *2). As a result of these developments, Mr. McGraw moves to dismiss the indictment against him.

---

[2]     The Eighth Circuit has come to the opposite conclusion of the en banc *Range* court and found the government's historical evidence to be sufficient to support the constitutionality of Section 922(g). *United States v. Jackson,* 69 F.4th 495, 505 (8th Cir. 2023). But while Judge Wood's dissent in *Atkinson* would have followed the Eighth Circuit's lead, the *Atkinson* majority refused to do so.

**ARGUMENT**

Recent jurisprudence makes clear that §922(g)(1) is unconstitutional as applied to Mr. McGraw. In its 2022 decision in *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court rejected the "intermediate scrutiny" framework that many appellate courts, including the Seventh Circuit, had previously applied to Second Amendment challenges. *Bruen,* 142 S. Ct. at 2127 (rejecting the two-step test set out in *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) because it "involved one step too many"). In its place, the *Bruen* Court explained that

> the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 51 n.10 (1961)).

In its recent holding in *Atkinson*, the Seventh Circuit acknowledged both that *Bruen* abrogated its previous precedents applying a two-step test and that the government may defend the constitutionality of a gun regulation only "by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Atkinson,* at *1 (citing *Bruen* at 2126). Here, Mr. McGraw's conduct—the possession of a firearm—is covered by the plain text of the Second Amendment and is presumptively protected by the Constitution. As a result, the government can only prevail if it can "*affirmatively prove* that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* at 2127 (emphasis added); *see also Atkinson* at *1. But it cannot. In fact, the historical record from the time of the founding demonstrates the exact opposite: "a lifetime ban on any felon possessing any firearm is not 'longstanding' in America." *See* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 697 (2009) ("Though recognizing the

4

hazard of trying to prove a negative, one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I."). This historical evidence means that the government cannot carry its burden to establish the constitutionality of Section 922(g)(1) as applied to offenders like Mr. McGraw.

**A.    The plain text of the Second Amendment covers conduct criminalized by Section 922(g)(1).**

The Second Amendment protects "the right of the people to keep and bear arms[.]" U.S. Const. Amend. II. As the Supreme Court has explained, this plain language "guarantee[s] the individual right to possess and carry weapons[.]" *D.C. v. Heller*, 554 U.S. 570, 592 (2008). Supreme Court precedent also indicates that individuals who have prior felony convictions are part of "the people" protected by the Second Amendment.

Specifically, in *Heller*, the Supreme Court noted that the term "the people" appears not just in the Second Amendment, but in the First and Fourth Amendments as well. *Id.* at 579. And the *Heller* Court found that the repeated use of this term reflected a consistent meaning— namely, that "[a]ll three of these instances unambiguously refer to individual rights, not 'collective' rights, or rights that may be exercised only through participation in some corporate body." *Id.* Based on this, the *Heller* Court held that the language of the clause creates "a strong presumption that the Second Amendment right is exercised individually *and belongs to all Americans*." *Id.* at 581 (emphasis added).

And while the *Heller* decision also included dicta emphasizing the Second Amendment's protections for "law-abiding, responsible citizens," *id.* at 635, the Seventh Circuit has rejected the notion that the dicta limit the scope of the Second Amendment. Specifically, in *United States v. Meza-Rodriguez*, issued prior to *Bruen*, the Seventh Circuit held that:

> While some of *Heller*'s language does link Second Amendment rights with the notions of "law-abiding citizens" and "members of the political community," *see Heller,* 554 U.S. at 580, 625, 128 S.Ct. 2783, those passages did not reflect an attempt to define the term "people." We are reluctant to place more weight on these passing references than the Court itself did. *United States v. Meza-Rodriguez,* 798 F.3d 664, 669 (7th Cir. 2015).

Instead—following the actual holding of the *Heller* decision—the Seventh Circuit has concluded that "the term 'the people' in the Second Amendment has the same meaning as it carries in other parts of the Bill of Rights[.]" *Id.* at 670.

Nothing in the Supreme Court's recent *Bruen* decision casts doubt on the understanding articulated in *Meza-Rodriguez.* Indeed, *Bruen* reiterated *Heller*'s holding that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Bruen*, 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581). And while *Bruen*—like *Heller* itself—also contained dicta emphasizing the Second Amendment's protections for "law abiding, responsible citizens," those passages do not purport to define (much less to redefine) the term "the people." A court in the Northern District of Illinois "agreed with defendant that <u>*Heller*</u> and <u>*Bruen*</u> did not <u>hold</u> that the <u>*Second Amendment*</u> categorically protects only law-abiding citizens, despite their repeated use of such qualified language as 'law abiding citizens'. The <u>*Heller*</u> court explained that 'the people' as used throughout the Constitution 'unambiguously refers to all members of the political community, not an unspecified subset.'" *Prince,* 2023 U.S. Dist. LEXIS 196874, at \*12. And, this Court has stated "that *Heller's* and *Bruen's* repeated references to 'law abiding citizens' do not establish the proposition that the Supreme Court has already answered whether the Amendment's plain text covers firearms possession by felons." *Agee*, 2023 WL 6443924, at \*12.

6

Additionally, dicta constitute "an unconstitutional advisory opinion" and "[t]reating dicta as binding violates the 'one doctrine more deeply rooted than any other in the process of constitutional adjudication': 'that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.'" *Bullock,* 2023 WL 4232309, at *45 (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944)).

The Third Circuit reached this same conclusion in its recent *en banc* opinion in *Range*. 69 F.4th at 101-103. There, the appellate court cited four reasons why the "law-abiding" language was dicta and did not compel a conclusion that felons fall outside the "people" to whom the Second Amendment refers. First, the court noted that the criminal histories of the plaintiffs in *Heller*, *McDonald v. Chicago*, 561 U.S. 742, 780 (2010), and *Bruen* were not at issue. *Id*. at 101. Second, the court pointed to *Heller's* discussion of the term "the people" in multiple amendments. It reasoned that "[u]nless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among 'the people' for Second Amendment purposes would exclude him from those rights as well." *Id*. at 102. The *Range* court saw "no reason to adopt an inconsistent reading of 'the people.'" *Id*.

Third, the *Range* court cited then-Judge Barrett's reasoning in her dissent in *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019), where she "persuasively explained that 'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Range,* 69 F.4th at 102 (citing *Kanter*). The court also endorsed its own previous precedent stating that the idea that "individuals with Second Amendment rights may nonetheless be denied possession of a firearm is hardly illogical." *Id*. (citing *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 344 (3d Cir. 2016)); *see also United States v. Rahimi*, 61 F.4th 443,

7

451-52 (5th Cir. 2023) (endorsing then-Judge Barrett's interpretation of the phrase "the people" as consistent with *Heller* and *Bruen*).

Finally, the *Range* court pointed to the expansiveness of the phrase "law-abiding," asserting that the Supreme Court could not mean that any individual who ever ran afoul of any law, however minor, could be excluded from the protections of the Second Amendment. *Range*, 69 F.4th at 102. It also took issue with the vagueness of the phrase "responsible," noting that such a term was susceptible to many different interpretations. *Id.*; *see also Rahimi*, 61 F.4th at 453 ("Under the Government's reading, Congress could remove 'unordinary' or 'irresponsible' or 'non-law-abiding' people—however expediently defined—from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? One easily gets the point[.]"). Ultimately, the *Range* court disagreed with the government's characterization of the scope of the phrase "the people" within the text of the Second Amendment because it would essentially delegate to the legislature who receives the protection of the Second Amendment.

For the reasons stated herein and consistent with this Court's decision in *Agee,* this Court should find that that the Second Amendment extends to individuals with prior felony records. *See Agee*, 2023 WL 6443924, at *14-5 ("no reason to think that the word "people" does not cover, on its face, all persons—including a person convicted of a felony.")

**B.**   **The government cannot carry its burden to establish that Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."**

Because the plain text of the Second Amendment covers the conduct criminalized by Section 922(g)(1), the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct.

at 2130; *Atkinson*, at *2.[3] The government cannot meet that burden because the historical record demonstrates that there is no longstanding tradition of preventing felons from possessing guns. Importantly, *Bruen* cautioned courts against "'uphold[ing] every modern law that *remotely resembles* a historical analogue,' because doing so 'risk[s] endorsing outliers that our ancestors would never have accepted.'" *Bruen*, 142 S. Ct. at 2133. (emphasis added).

In *Atkinson*, the Seventh Circuit was presented with a record developed before the *Bruen* opinion was issued. In deciding to remand to the district court for further briefing, the Seventh Circuit acknowledged that "the government's brief before us includes some historical analysis," but stated that the record was "nothing close to what would satisfy the demanding standard set forth in *Bruen*." *Atkinson*, at *3. In its briefing, the government had provided the court with "some Founding era commentary," and explained that "that felons … were historically subject to execution and estate forfeiture, as well as the loss of other civic rights." *Id.* Given the *Atkinson* court's statement that this type of information "falls well short of *Bruen's* demands," *id*., the burden is on the government to make a more substantial showing before this Court.

The defense asserts that the government will be unable to meet this burden because the historical evidence instead shows a *lack* of a tradition restricting felons from gun ownership. "[T]he federal felon-firearm prohibition only dates back to 1938, and nonviolent felons were not prevented from possessing firearms until the enactment of the 1968 [Gun Control Act]". *See* Conrad Kahn, *Challenging the Federal Prohibition on Gun Possession by Nonviolent Felons*, 55 S. Tex. L. Rev. 113, 127 (2013). Two prescient dissents from the pre-*Bruen* era—which largely predicted *Bruen* and which exhaustively canvassed the historical record—firmly demonstrate

---

[3] As noted above, prior to the Supreme Court's opinion in *Bruen*, the Seventh Circuit rejected challenges to §922(g)(1) under the means-end inquiry after determining that the historical record on felons possessing firearms was "inconclusive." *See, e.g., Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019); *Hatfield v. Barr*, 925 F.3d 950 (7th Cir. 2019). The means-end test was abrogated in *Bruen*.

that felon-in-possession laws do not have historical support. *See Kanter v. Barr*, 919 F.3d at 454 (7th Cir. 2019) (Barrett, J., dissenting) ("at least thus far, scholars have not been able to identify any such laws" barring non-violent offenders from possessing firearms); *Folajtar v. Att'y Gen. of the United States*, 980 F.3d 897, 915 (3d Cir. 2020) (Bibas, J., dissenting) ("I cannot find, and the majority does not cite, any case or statute from that era that imposed or authorized such bans.").

Under *Bruen*, that lack of regulation is itself entitled to substantial weight. In *Bruen*, the Supreme Court held that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. That is the situation here. While defense does not dispute that firearms today are more advanced today than they were in 1791, nonetheless, crime and recidivism are general societal problems that have existed throughout history, including in 1791. But American society did not traditionally respond to these problems by permanently barring all felons from possessing guns.

This conclusion is consistent with the position adopted by the Third Circuit in *Range*. There, the government and amici relied on a 1961 law restricting firearm ownership, and other similar, slightly older laws. The Third Circuit rejected these laws as analogues, stating that it was "confident that a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls well short of 'longstanding' for purposes of demarcating the scope of a constitutional right." 69 F.4th at 104.

Nor did the Third Circuit accept other older historical analogues proffered by the

government that prohibited firearm ownership based on race and religion. The *Range* court noted, first, that those restrictions would be unconstitutional today, and second, that the government is required to analogize those prohibited groups to the individual at issue (in that case, Mr. Range). *Id.* at 104-105. The government failed to carry this burden as to Mr. Range, and in this case must be held to that strict burden as to Mr. McGraw.

And while the majority opinion in *Range* included language stating that its opinion was a "narrow" one, *id.*, it is clear that the reasoning of the opinion is more broadly applicable. The dissent in that case recognized as much, acknowledging that "the analytical framework [the majority has] applied to reach their conclusion renders most, if not all, felon bans unconstitutional." 69 F.4th at 113 (J. Shwartz, dissenting).

Similarly, the *Bullock* court rejected information proffered by the government as sufficient to show that disarming a defendant previously convicted of violent felonies was "supported by a historical tradition of analogous laws.*" Bullock*, 2023 WL 4232309, at *50. First, the court considered and rejected "the Massachusetts, Pennsylvania and New Hampshire constitutional ratifying conventions" as evidence of historical tradition of analogous laws. *Id.* at *50-3. In declining to accept these propositions in support of the government's position the court noted that none of the "proposals became law"; the proposals focused on dangerousness rather than "felon" status; and, pursuant to *Bruen*, "*three* colonial regulations" were probably insufficient to show tradition. *Id.* at *52. Second, the court agreed with *Range* that governments' ability to punish crimes by death does not automatically render less severe punishment, a disarmament, a part of 'nation's history and tradition.' *Id.* at *53-5. Third, the court noted various problems with law journal articles proffered by the government, including that their authors were not historians and that the articles could easily be "cherry picked" to support

11

defendant's or government's positions. *Id.* at *53. Finally, as stated *supra,* other courts, including courts in this district, have determined that 18 U.S.C. §922(g)(1) is unconstitutional.

This Court should apply that same analytical framework, which leads to the inevitable conclusion that, under the Supreme Court's "text and tradition" approach to the Second Amendment, Section 922(g)(1) is unconstitutional as applied to Mr. McGraw; or, that the government is unable to prove that Mr. McGraw's disarmament "is consistent with this Nation's historical tradition of firearm regulation" as required by *Bruen,* 142 S. Ct. at 2126.

## CONCLUSION

Jeff McGraw is covered by the plain text of the Second Amendment. At the time that the Second Amendment was ratified, there were not any felon-in-possession laws on the book, nor were there any other firearms restrictions that were meaningfully similar to Section 922(g)(1). For those reasons, the Court should find that Section 922(g)(1) is unconstitutional as to Mr. McGraw and should grant his motion to dismiss.

Respectfully submitted,
/s/Yelena A. Dolgosheeva

DolTer Law, P.C.
Mailing Address: P.O. Box 5382, Buffalo Grove, Illinois 60089
Telephone: 847-208-4348
Fax: 312-267-1810
E-mail: dolgosheeva2002@yahoo.com