IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | **23 CR 28** |
| | ) | **Honorable Edmond E. Chang** |
| **JEFF MCGRAW,** | ) | |
| *Defendant.* | ) | |

**SUPPLEMENT TO MOTION TO DISMISS THE INDICTMENT ON SECOND AMENDMENT GROUNDS**

On June 21, 2024, the Supreme Court issued its decision in *United States v. Rahimi*, No. 22-915, 602 U.S. ___, 2024 WL 3074728 (U.S. June 21, 2024), which held that 18 U.S.C. §922(g)(8)(C)(i) does not facially violate the Second Amendment. Specifically, the Court held that §922(g)(8)(C)(i)—which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that the person represents a credible threat to the physical safety of others—is constitutional.

*Rahimi* is a narrow decision that embraces *Bruen's* focus on text, history, and tradition. First, the Supreme Court rejected the government's theory that the Second Amendment allows Congress to disarm anyone who is not "responsible" and "law-abiding." Second, the Court conducted a historical analysis and concluded that "going armed" and surety laws established a tradition— temporarily disarming someone found by a court to pose a credible threat to the physical safety of others—similar to §922(g)(8).

Here, as in *Rahimi*, the government's argument that the Second Amendment protects only so-called "law-abiding, responsible citizens" fails. And, *Rahimi's* historical analysis provides little guidance because §922(g)(1) is very different from §922(g)(8). Specifically, the upheld statute imposes a temporary restriction on gun possession only after a court finds—following a

hearing of which the affected individual receives notice and wherein he has an opportunity to be heard—that the person poses a clear threat of physical violence to another. By contrast, §922(g)(1) provides a permanent and categorical ban that immediately follows any conviction carrying a maximum penalty of more than a year of imprisonment, without any judicial finding that the person poses a threat. Unlike in *Rahimi*, in this case the government has failed to identify any historical evidence supporting such a far-reaching restriction.

The analogues that *Rahimi* relied on to hold that §922(g)(8) fits within our Nation's tradition of firearm regulation clearly do not demonstrate a tradition of broadly and permanently disarming all persons convicted of crimes punishable by more than a year of imprisonment. The government has cited no historical laws showing that §922(g)(1) is "consistent with the principles that underpin our regulatory tradition." *Rahimi*, 2024 WL 3074728, at *11. And the Supreme Court's reliance on features of §922(g)(8) that are quite obviously missing from §922(g)(1) confirms that the government's purported analogues cannot pass constitutional muster under *Bruen* and *Rahimi*. Thus, §922(g)(1) violates the Second Amendment facially or, at the very least, as applied to Mr. McGraw.

A.   **Rahimi rejected the government's argument that the Second Amendment protects only "law-abiding, responsible citizens."**

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. Amend. II. In *Rahimi*, the government argued that the amendment "protects only law-abiding, responsible citizens." Gov't Br. 12, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023). In doing so, the government cited several references to "law-abiding, responsible citizens" from *Heller* and *Bruen*, claiming that the Supreme Court's "precedents recognize that Congress may disarm persons who are not law-abiding, responsible citizens." *Id*. at 11.

The Supreme Court easily rejected that argument.[1] *Rahimi*, 2024 WL 3074728, at *11; *See Id*. at 98 (Thomas, J., dissenting) ("The Government … argues that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.' Not a single Member of the Court adopts the Government's theory."). First, the Court stated that "responsible" is a "vague term" and it is "unclear what such a rule would entail." *Id*. at *21 (majority opinion). Second, the Court explained that the government's proposed rule did not "derive from [the Court's] case law." *Id*. It noted that *Heller* and *Bruen* used the term "responsible" to "describe the class of ordinary citizens who undoubtedly enjoy the right," but neither decision adopted that formulation to define the limits of the Second Amendment. *Id*.; *See also Id*. at 98-9 (Thomas, J., dissenting) ("The Government's claim that the Court already held the Second Amendment protects only 'law-abiding, responsible citizens' is specious at best.").

Here too, the government argues that the Second Amendment applies only to law-abiding, responsible citizens, while acknowledging that "that this Court has concluded differently." Response at 10-11. As in *Rahimi*, that argument fails. *Rahimi* already rejected the "responsible" prong. *Rahimi*, 2024 WL 3074728, at *11. And the "law-abiding" prong fares no better. Like "responsible," "law-abiding" is vague. Is someone who drives 30 mph in a 25- mph zone "law-abiding"? *See* Tr. of Oral Arg. 8, *Rahimi* (No. 22-915). The Supreme Court cast no doubt that "law-abiding" is a vague term.

The government also asserts that the Second Amendment permits Congress to disarm anyone it deems "dangerous." Response at 13, 33-4. But this argument just repackages the

---

[1] At oral argument, the government said that it was not invoking the "law-abiding" prong of its proposed rule for individuals subject to §922(g)(8). *See* Tr. of Oral Arg. 8–9, *United States v. Rahimi*, No. 22-915 (U.S. Nov. 7, 2023). So the majority opinion discussed only the "responsible" prong. *Rahimi*, 2024 WL 3074728, at *11. In his dissenting opinion, Justice Thomas—who agreed with the majority in rejecting the government's theory—provided a more robust analysis discussing both prongs. *Id*. at *98-103 (Thomas, J., dissenting).

government's "responsible citizen" theory. The government confirmed at oral argument in *Rahimi* that it uses the terms "not responsible" and "dangerous" interchangeably. Tr. of Oral Arg. 10–12, *Rahimi* (No. 22-915). So, by rejecting the government's "responsible" theory, the Supreme Court also rejected its "dangerous" theory. Indeed, "dangerous" is just as "vague" as "responsible." And interpreting historical principles "at such a high level of generality … waters down the right," *Id*. at *63 (Barrett, J., concurring), by leaving the scope of the Second Amendment to "Congress's policy choice," *Id*. at *101 (Thomas, J., dissenting).

In short, the "law-abiding, responsible citizen" theory unanimously rejected by the Supreme Court in *Rahimi* "is the Government's own creation, designed to justify every one of its existing regulations." *Id*. at *99 (Thomas, J., dissenting). "It has no doctrinal or constitutional mooring." *Id*. To the contrary, *Rahimi* confirms that the Supreme Court meant what it said when it declared that the Second Amendment right "belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008).

**B.      Rahimi's historical analysis of §922(g)(8) only highlights the lack of historical support for the very different and much broader felon-in-possession ban.**

Just because the Second Amendment protects all Americans, however, does not mean that the right to bear arms is "unlimited." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2128 (2022). To justify a firearm law infringing on otherwise protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2126. "A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Rahimi*, 2024 WL 3074728, at *11 (cleaned up). "Why and how the regulation burdens the right are central to this inquiry." *Id*.

*Rahimi* reaffirmed *Bruen's* mandated and strict historical analysis, making clear that a statute must be struck down under the Second Amendment if the government cannot—as is the case here—identify "relevantly similar" historical laws demonstrating that a modern regulation "is consistent with the principles that underpin our regulatory tradition." *Id*. In applying *Bruen*, *Rahimi* confirmed that Second Amendment challenges mandate detailed historical analysis applied to a specific law, not sweeping generalities, as the government has attempted to do here in defense of §922(g)(1), for which it has been unable to identify any similar firearm regulations. Importantly, the very features that saved §922(g)(8)(C)(i) from constitutional peril in *Rahimi* are plainly lacking with respect to the much broader §922(g)(1), making clear and obvious that §922(g)(1) cannot pass muster under *Bruen*.

In *Rahimi*, the Supreme Court held that the government had justified §922(g)(8)(C)(i) by pointing to a tradition of "temporarily disarm[ing]" an "individual found by a court to pose a credible threat to the physical safety of another." *Id.* at *21. In particular, the Court relied on "going armed" laws and surety statutes. These laws established a tradition of *temporarily* disarming someone found by a court to pose a credible threat to the physical safety of others (just like §922(g)(8)(C)(i) does today). But *Rahimi's* historical analysis provides little guidance to the issue in this case because §922(g)(8) and §922(g)(1) are very different. In stark contrast to §922(g)(8)(C)(i), §922(g)(1) contains no requirement that a judge find that someone poses a threat, and the statute permanently disarms people on the basis of a prior conviction alone.

1. **The law at issue in *Rahimi* has little in common with §922(g)(1).**

Besides both residing within the same section of the United States Code and restricting firearm possession, the law involving domestic restraining orders at issue in *Rahimi* §922(g)(8)) and the felon-in-possession law at issue here (§922(g)(1) have little in common with each other. Importantly, the Supreme Court in *Rahimi* highlighted specific features of

5

§922(g)(8)(C)(i) that strictly limited its scope and its ban's duration and thereby rendered it constitutional.

First, §922(g)(8)(C)(i) restricts gun possession if a restraining order "includes a finding that [a] person represents a credible threat to the physical safety of [an] intimate partner or child." In other words, the statute "restricts gun use to mitigate demonstrated threats of physical violence" and applies only once a court has made an individualized finding that such a threat exists. *Rahimi*, 2024 WL 3074728, at *18. By contrast, §922(g)(1) is a categorical ban that prohibits everyone convicted of a crime punishable by more than a year in prison from possessing a gun—without any individualized finding and whether or not they threaten others.

Second, the Supreme Court emphasized that §922(g)(8)'s restriction is "temporary." *Id*. That is, the statute "only prohibits firearm possession so long as the defendant is subject to a restraining order." *Id*. (cleaned up). Section 922(g)(1), however, imposes a "permanent, life-long prohibition on possessing firearms." *Id*. at *73 (Thomas, J., dissenting); see *United States v. Duarte*, 101 F.4th 657, 685 (9th Cir. 2024) (discussing "§922(g)(1)'s no exception, lifetime ban").

To be clear, *Bruen* and *Rahimi* require this Court to compare §922(g)(1) to historical traditions, not its statutory neighbors. But the stark differences between §922(g)(1) and §922(g)(8) confirm that the Supreme Court's decision upholding the latter does not affect the historical analysis here. Indeed, the analogues that *Rahimi* relied on to hold that §922(g)(8) fits within our Nation's tradition of firearm regulation, "going-armed" laws and surety statutes, provide no support for §922(g)(1).

2. **"Going-armed" laws and surety statutes provide no support for upholding §922(g)(1) as constitutional.**

"Going-armed" laws "provided a mechanism for punishing those who had menaced others with firearms." *Rahimi*, 2024 WL 3074728, at *18. In other words, they criminalize specific—and serious—misconduct with a gun. Section 922(g)(1), on the other hand, bans a category of people from possessing firearms whether or not they have "terrif[ied] the good people of the land." *See Id*. at *17. And "going-armed" laws required a judicial determination that "a particular defendant … had threatened another with a weapon." *Id*. at *18. Thus, "going-armed" laws—like §922(g)(8)(C)(i)—were similarly limited in scope, disarming people based on individualized determinations that they threatened public safety rather than overly broad categorical bans. As discussed above, §922(g)(1) requires no such determination. Moreover, "[m]any postfounding going armed laws had a self-defense exception" *See Id*. at *94 (Thomas, J., dissenting). Not so for someone disarmed under §922(g)(1).

Surety laws mitigated "demonstrated threats of physical violence," *Id.* at *18, but §922(g)(1) contains no requirement that someone poses a threat. The surety regime was "individualized," *Id.* at *14, while §922(g)(1) is categorical. A person subject to a surety bond received "significant procedural protections" and "could obtain an exception if he needed his arms for self-defense." *Id*. at *16. Not so for someone convicted of a felony. *See Logan v. United States*, 552 U.S. 23, 28 n.1 (2007) (explaining that the provision for restoring firearm rights, 18 U.S.C. §925(c), has been "rendered inoperative" by lack of funding). Finally, surety bonds had a "limited duration," *Id.* at *18, compared to §922(g)(1)'s lifetime prohibition. In short, "going-armed" and surety laws are not remotely similar to §922(g)(1) and the historical support the government provided in this case would not pass the relevantly similar standard discussed in *Rahimi*.

7

## CONCLUSION

In *Rahimi* the government successfully came forward with highly specific founding-era regulations that justified the narrowly tailored and temporary firearm restriction found in §922(g)(8)(C)(i). By contrast, the government still has not identified a single historical firearm law that imposed anything close to §922(g)(1)'s broad Second Amendment divestment, i.e., a categorical, life-long prohibition for every American ever convicted of any offense punishable by more than one year of imprisonment. Thus, §922(g)(1) is unconstitutional because it violates the Second Amendment in all applications.

Respectfully submitted,

/s/Yelena A. Dolgosheeva

DolTer Law, P.C.
Mailing Address: P.O. Box 5382, Buffalo Grove, Illinois 60089
Telephone: 847-208-4348
Fax: 312-267-1810
E-mail: dolgosheeva2002@yahoo.com