UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFF MCGRAW | Case No. 23 CR 28<br><br>Judge Edmond E. Chang |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SUPPLEMENT TO MOTION TO DISMISS THE
INDICTMENT ON SECOND AMENDMENT GROUNDS**

In his supplemental brief, defendant argues that *United States v. Rahimi*, 602 U.S. ---, 144 S. Ct. 1889 (June 21, 2024), supports his claim that 18 U.S.C. § 922(g)(1) violates the Second Amendment. Defendant is wrong. In *Rahimi*, the Supreme Court upheld the constitutionality of Section 922(g)(8)(C)(i)'s ban on firearm possession by an individual subject to a domestic violence restraining order, and in doing so explicitly reaffirmed *Heller*'s directive that "many [firearms] prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, 144 S. Ct. at 1902 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)). For the reasons set forth below, and those previously articulated in the government's response (Dkt. 87), defendant's motion to dismiss the indictment (Dkt. 82) should be denied.

**I.     The Supreme Court's Decision in *Rahimi* Clarified the Analytical Framework Governing Second Amendment Challenges.**

In *Rahimi*, the Supreme Court upheld Section 922(g)(8)(C)(i) under the Second Amendment. Section 922(g)(8)(C)(i) prohibits gun possession by an individual who is subject to a court order, issued based upon a finding that the individual "represents

1

a credible threat to the physical safety of such intimate partner or child," that restrains the individual from engaging in conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child. 18 U.S.C. § 922(g)(8)(A)–(C)(i).[1] In determining whether § 922(g)(8)(C)(i) was consistent with our "historical tradition of firearm regulation," *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022), the Court examined historical surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and going armed laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Rahimi*, 144 S. Ct. at 1900–01. The Court found that these laws established that, "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896. Accordingly, the Court held that, "[t]aken together, the surety and going armed laws confirm" that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901.

In reaching its decision, the Court acknowledged that "Section 922(g)(8) is by no means identical to these founding era regimes," but it explained that "it does not need to be": Section 922(g)(8)'s "prohibition on the possession of firearms by those

---

[1] Section 922(g)(8)(C)(i) prohibits an individual "who is subject to a court order that" "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate" "restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child" and "includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child." 18 U.S.C. § 922(g)(8)(A)–(C)(i).

found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id*. The Court clarified that its recent precedents were not meant to describe the Second Amendment as "a law trapped in amber." *Id*. at 1897. Instead, the Court stated, the Second Amendment "permits more than just those regulations identical to ones that could be found in 1791." *Id*. at 1897–98. The Court explained that, when assessing whether a law complies with the Second Amendment, courts should consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" by ascertaining "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id*. at 1898 (quoting *Bruen*, 597 U.S. at 29).

Under this standard, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Rahimi*, 144 S. Ct. at 1898. But even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster,'" so long as the law "comport[s] with the principles underlying the Second Amendment." *Id*. (quoting *Bruen*, 597 U.S. at 30). As Justice Barrett explained in her concurrence, "imposing a test that demands overly specific analogues has serious problems," including "forc[ing] 21st-century regulations to follow late-18th-century policy choices," and "assum[ing] that founding-era legislatures maximally exercised their power to regulate." *Id*. at 1925 (Barrett, J., concurring).

3

## II. *Rahimi* Supports the Government's Position that Section 922(g)(1) is Consistent With History and Tradition.

*Rahimi* supports the government's position that Section 922(g)(1) is consistent with our "historical tradition of firearm regulation," as required by *Bruen*, 597 U.S. at 17. As detailed in the government's response to defendant's motion to dismiss, Section 922(g)(1) is consistent with the historically rooted principle that the government may disarm categories of persons who were untrustworthy adherents to the law, such as felons, whether through estate forfeiture, capital punishment, or less extreme measures like simple dispossession. *See* Dkt. 87 at 12–30. Standing alone, or "[t]aken together," these regulatory regimes and historical traditions are "relevantly similar" to Section 922(g)(1). *Rahimi*, 144 S. Ct. at 1901. They impose a similar restriction: barring firearm possession by those who cannot be trusted to abide by the law. And they do so for the similar reason that such individuals, if armed with deadly force, threaten the social order and present a risk of danger to others. *See United States v. Jackson*, 69 F.4th 495, 504–05 (8th Cir. 2023), *cert granted, vacated, and remanded by Jackson v. United States*, No. 23-6170, 2024 WL 3259675 (U.S. July 2, 2024) (explaining that § 922(g)(1) aims to prevent not just violence, but also "lawlessness"); *id.* at 502 ("While the better interpretation of the history may be debatable, we conclude that either reading supports the constitutionality of § 922(g)(1) as applied to Jackson and other convicted felons, because the law 'is

4

consistent with the Nation's historical tradition of firearm regulation.'") (quoting *Bruen*, 597 U.S. at 24).

It does not matter that Section 922(g)(1) is not "identical to those founding era regimes," because it "does not need to be." *Rahimi*, 144 S. Ct. at 1901. Its ban on felons fits neatly within the tradition of disarming untrustworthy adherents to the law. Indeed, this Court has previously concluded that Section 922(g)(1) "does not violate the Second Amendment" because the government has shown that "the felon dispossession statute is part of this country's historical tradition of firearm regulation." *United States v. Gates*, No. 22-CR-397, 2023 WL 5748362, at *5 (N.D. Ill. Sept. 6, 2023). Nothing in *Rahimi* alters this conclusion.

### III. Defendant's Arguments to the Contrary Misconstrue *Rahimi* and Are Unpersuasive.

Defendant misconstrues *Rahimi* in an attempt to find support for his contention that Section 922(g)(1) offends the Second Amendment, ignoring the import of *Rahimi*'s holding, which—if anything—further supports the statute's constitutionality.

First, defendant makes much of *Rahimi*'s statement that citizens may not be disarmed simply because they are not "responsible." *See, e.g.*, Dkt. 97 at 2-3. The Court in *Rahimi* found that the term "responsible" is a "vague term" and that "[i]t is unclear what such a rule would entail." *Rahimi*, 144 S. Ct. at 1903. The Court did not, however, question the argument the government is advancing here: that non-law-abiding citizens—felons specifically—may be disarmed. Indeed, as noted above, the Court made sure to restate that felon dispossession statutes are presumptively

5

lawful *Id.* at *10. Accordingly, the Court's rejection of a rule based on "responsibility"—a term it found vague—has no bearing on the constitutionality of a statute, like the one at issue here, that draws a clear line at adherence to felony criminal laws. The Court effectively said as much.

Second, defendant contends that the analogues of Section 922(g)(8)—surety and going armed laws—identified in *Rahimi* do not provide support for upholding § 922(g)(1). Dkt. 97 at 7. This argument misses the mark. In comparing surety and going-armed laws—which establish a tradition of disarming "individuals who present a credible threat to the physical safety of others"—to Section 922(g)(8)—a prohibition on firearms possession by those subject to an order of protection—the Court had "no trouble" finding them sufficiently analogous to pass Second Amendment scrutiny. *Rahimi*, 144 S. Ct. at 1902. This holding is specific to Section 922(g)(8), the statute challenged in that case, as defendant concedes. *Id.* at 1903 ("we conclude *only this* . . .") (emphasis added); Dkt. 97 at 1 (arguing that "*Rahimi* is a narrow decision"). In this case, the government devoted over 20 pages of its response brief to historical laws that disarmed untrustworthy adherents to the law, including felons (*see* Dkt. 87 at 18-41). Defendant's argument has no relevance to whether the analogues identified in the government's response are sufficiently similar to Section 922(g)(1).

To the extent that *Rahimi* is instructive in the context of Section 922(g)(1), it supports the government's application of the *Bruen* framework. As discussed above, *Rahimi* made clear that the Court's methodology should not be misunderstood as requiring that the challenged statute be identical to laws "that could be found in

6

1791." *Rahimi*, 144 S. Ct. at 1898. Instead, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory framework." *Id.*; *see also id.* at 1903 ("As we said in *Bruen*, a 'historical *twin*' is not required."). Whereas the government focuses on the principles underlying historical dispossession laws, as *Rahimi* instructs, defendant fixates on the absence of a historical twin. The Supreme Court expressly rejected the Fifth Circuit's attempt to adopt the latter approach. *See Rahimi*, 144 S. Ct. at 1903 (observing that the Fifth Circuit erred in reading *Bruen* to require a historical twin). Thus, defendant's challenge fails.

Moreover, the Court in *Rahimi* highlighted that "going armed laws provided for imprisonment . . . and if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible." *Id.* at 1902. This analysis supports the government's argument that historical laws permitting estate forfeiture and capital punishment for felons similarly permit the "lesser restriction" of mere firearms dispossession. *See also* Dkt. 87 at 25-30, 36-41.

Regarding defendant's own as-applied challenge, there can be no legitimate question that defendant is not law abiding and that he presents a risk of danger to others. Defendant has prior violent felony convictions for reckless discharge of a firearm and murder conspiracy. *See id.* at 3, 45. Moreover, in the instant case, defendant is alleged to have possessed a firearm during a domestic violence incident in which he punched his then-girlfriend and pointed the firearm—a loaded Glock 45

7

9mm equipped with a laser and auto-search switch that rendered it a machinegun—at the victim and her mother. *Id.* at 52. The Supreme Court has repeatedly emphasized that felon-dispossession laws are presumptively lawful. *See Heller*, 554 U.S. at 626–27 & n.26, 635; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 597 U.S. at 26, 29, 71–72, 81; *Rahimi*, 144 S. Ct. at 1902. And *Rahimi* indicates that, at bare minimum, this Nation's historical tradition supports disarming individuals who, like defendant, present a threat of danger to others. *See, e.g.*, *Rahimi*, 144 S. Ct. at 1902 (holding the government may "disarm individuals who present a credible threat to the physical safety of others"). Like his facial challenge, defendant's as-applied challenge fails under *Rahimi*.

For these reasons and those set forth in the government's initial response (Dkt. 87), defendant's motion to dismiss the indictment (Dkt. 82) should be denied.

        Respectfully submitted,

        MORRIS PASQUAL
        Acting United States Attorney

By:   /s/ *Brandon D. Stone*
      BRANDON D. STONE
      Assistant United States Attorneys
      United States Attorney's Office
      219 South Dearborn Street
      Chicago, Illinois 60604
      (312) 353-5300

Dated:     July 19, 2024