```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    UNITED STATES OF AMERICA         )  Case No. 23 CR 00028
                                       )
 4                    v.               )
                                       )
 5    JEFF McGRAW,                     )  Chicago, Illinois
                                       )  September 23, 2024
 6                    Defendant.       )  10:32 a.m.

 7          TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA HEARING

 8              BEFORE THE HONORABLE EDMOND E. CHANG

 9    APPEARANCES:

10    For the Government:     MR. MORRIS O. PASQUAL
                              ACTING UNITED STATES ATTORNEY
11                            BY:  MR. JIMMY L. ARCE
                              Assistant United States Attorney
12                            219 South Dearborn Street, Suite 500
                              Chicago, Illinois 60604
13                            (312) 353-5300

14    For the Defendant:      DolTER LAW P.C.
                              BY:  MS. YELENA A. DOLGOSHEEVA
15                            P.O. Box 5382
                              Buffalo Grove, Illinois 60089
16                            (847) 208-4348

17

18    Court Reporter:         JUDITH A. WALSH, CSR, RDR, F/CRR
                              Official Court Reporter
19                            219 South Dearborn Street, Room 2342
                              Chicago, Illinois 60604
20                            Telephone:  (312) 702-8865
                              judith_walsh@ilnd.uscourts.gov
21

22

23                        *   *   *   *   *

24                  PROCEEDINGS REPORTED BY STENOTYPE
         TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
25
```

1          (Proceedings heard in open court:)

2                    THE CLERK:  233 CR 28, USA versus Jeff McGraw.

3                    THE COURT:  All right.  You can just stay at counsel

4      table and talk right into the mikes.  And we'll get

5      appearances.

6                    MR. ARCE:  Good morning, your Honor.  Jimmy Arce,

7      A-r-c-e, on behalf of the United States stepping in for Brandon

8      Stone.

9                    MS. DOLGOSHEEVA:  Good morning, your Honor.  Yelena

10     Dolgosheeva on behalf of Mr. McGraw.  And Mr. McGraw is present

11     to my left.

12                   THE COURT:  Okay.  Good morning.

13                   Good morning, Mr. McGraw.

14                   THE DEFENDANT:  Good morning.

15                   THE COURT:  All right.  We are here for a change of

16     plea.  Are both sides ready to proceed?  First, for the

17     government.

18                   MR. ARCE:  Yes, your Honor.

19                   THE COURT:  And the defense?

20                   MS. DOLGOSHEEVA:  Yes, your Honor.

21                   THE COURT:  Okay.  And then before we get started, let

22     me just make sure, not for purposes of criminal Rule 11 plea

23     negotiations, but to just ensure assistance of counsel, this is

24     a plea declaration, Ms. Dolgosheeva, correct?

25                   MS. DOLGOSHEEVA:  Yes, your Honor.

1    THE COURT:  And so that means that any of the pretrial

2  motions that have been filed to date would not be preserved for

3  appeal.  And so Mr. McGraw understands that?

4    THE DEFENDANT:  Yes.

5    MS. DOLGOSHEEVA:  Yes, your Honor.  We have discussed

6  that and we have --

7    THE COURT:  All right.  We'll talk further,

8  Mr. McGraw.  I just wanted to make sure defense counsel is

9  already on board as well.

10    All right.  So, Mr. McGraw, I understand it's your

11  intention to change your plea today to the sole count of the

12  indictment from not guilty to guilty.  And I do need to, during

13  this hearing, make sure of a number of things, though.  First,

14  I need to make sure that you're mentally competent to plead

15  guilty, and that means that you're not suffering from some kind

16  of mental illness that would prevent you from understanding

17  what you're doing here today.

18    I need to ensure that you've had the assistance of

19  counsel; that you understand the charge to which you propose to

20  plead guilty; you understand what the maximum penalties are for

21  this kind of charge; that you know all the rights you'll be

22  giving up by pleading guilty.  The plea does have to be

23  voluntary, meaning no one is threatening you or forcing you to

24  plead guilty, but we also need to check on a factual basis for

25  the plea.  So we'll do these things one by one during today's

1    hearing.

2          If at any point you want to stop and speak with your

3    lawyer in private, just get her attention or get my attention,

4    and we'll take a timeout.  All right.  So do you understand you

5    can ask us to pause at any time during the hearing?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  Now, you're going to be making

8    more statements, and because you're not a lawyer, you do have

9    be put under an oath to tell the truth.

10         I'll ask the courtroom deputy to do that now.

11         THE CLERK:  Would you please raise your right hand.

12    (Defendant sworn.)

13         THE DEFENDANT:  Yes.

14         THE CLERK:  Thank you.

15         THE COURT:  Okay.  Mr. McGraw, you are now under an

16    oath to tell the truth, and that means that if you were to make

17    a false statement during today's hearing, you could be

18    prosecuted separately for the crime of false statement or for

19    the crime of perjury.  Do you understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Now, we talked about taking a timeout to

22    talk to your attorney if you have any questions that come up,

23    but also you can just stop this hearing at any time.  And if

24    you've changed your mind and you want a trial instead, then

25    we'll get a jury trial ready for you.

1          So you understand that not only can you pause to talk

2     with your attorney, you can stop this hearing at any time?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  You also have a right against

5     self-incrimination.  That means that you have the absolute

6     right to not say anything that tends to show you're guilty of

7     this charge but, of course, in a change of plea hearing, you

8     will be making statements that tend to show you are guilty.

9     And pleading guilty is the ultimate act of incriminating

10    yourself.

11         So do you understand you have that right and that by

12    going through with today's hearing, you'll be giving up that

13    right?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Okay.  In terms of mental competency, I'm

16    just going to ask you some background questions to see if you

17    understand what I'm saying, and I'll also ask about your mental

18    health history, if any.

19         So go ahead, Mr. McGraw, and state your full name

20    including your middle name if you have one.

21         THE DEFENDANT:  Jeff Ahrmon McGraw.

22         THE COURT:  Can you spell your middle name?  And

23    actually, also pull the mike closer and speak right into it.

24         THE DEFENDANT:  Jeff Ahrmon McGraw.  My middle name,

25    A-h-r-m-o-n.

```
 1                THE COURT:  How old are you?

 2                THE DEFENDANT:  I'm 30.

 3                THE COURT:  Are you married?

 4                THE DEFENDANT:  No.

 5                THE COURT:  Do you have any children?

 6                THE DEFENDANT:  Yes.

 7                THE COURT:  How many?

 8                THE DEFENDANT:  Three.

 9                THE COURT:  How old are they?

10                THE DEFENDANT:  12 -- no, 13, 11, and 9.

11                THE COURT:  How far did you get in school?

12                THE DEFENDANT:  I got my GED.

13                THE COURT:  And before you were arrested in this case,

14   what was the last job you held down?

15                THE DEFENDANT:  I'm an entertainer.

16                THE COURT:  Okay.  An entertainer?

17                THE DEFENDANT:  Yes.

18                THE COURT:  Okay.  Were you doing that full-time?

19                THE DEFENDANT:  Yes.

20                THE COURT:  And in terms of your physical health

21   first, your physical health, are you under the care of a doctor

22   for any ongoing physical condition?

23                THE DEFENDANT:  No.

24                THE COURT:  Are you suffering from any ongoing

25   physical condition?
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  What is it?

3          THE DEFENDANT:  My leg, I broke my leg.  I got to do

4  physical therapy because I got a rod and pins in my leg.

5          THE COURT:  Okay.  And in terms of physical therapy,

6  are you doing any now that you're in custody or not?

7          THE DEFENDANT:  Yes, but they stopped me because they

8  said the U.S. marshals only approved me for ten visits.

9          THE COURT:  Okay.  You had ten visits for physical

10  therapy, but now they've stopped?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And are you taking any medication in

13  connection with this physical therapy or pain management, for

14  example?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Okay.  What kind of medication?

17          THE DEFENDANT:  I'm taking nerve medication,

18  gabapentin.

19          THE COURT:  Say it one more time.

20          THE DEFENDANT:  It's a nerve medication called

21  gabapentin.

22          THE COURT:  And how long have you been taking that,

23  approximately?

24          THE DEFENDANT:  14 months.

25          THE COURT:  So during that 14-month time period while

1    you've been taking this medication, has it ever made it harder

2    for you to think or understand things?

3              THE DEFENDANT:  No.

4              THE COURT:  Any other medication?

5              THE DEFENDANT:  Yes.

6              THE COURT:  What else?

7              THE DEFENDANT:  I take psyche medications.

8              THE COURT:  And so let's -- before we get to your

9    mental health history, any other medications for any physical

10   condition?

11             THE DEFENDANT:  Blood pressure pills.

12             THE COURT:  And how long have you been taking the

13   blood pressure pills?

14             THE DEFENDANT:  Seven years.

15             THE COURT:  And so same question here:  During the

16   time that you've been taking these blood pressure pills, has

17   that ever made it harder for you to think or understand things?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Any other medication for physical

20   problems?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Now, in terms of your mental health

23   history, have you been diagnosed or treated or suffered from a

24   mental illness?

25             THE DEFENDANT:  Yes, sir.

1          THE COURT:  What is it?

2          THE DEFENDANT:  PTSD, anxiety, depression, and OCD.

3          THE COURT:  So for these four conditions, are you

4     taking medication right now?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  And what are you taking?

7          THE DEFENDANT:  I take Wellbutrin, clonidine, and

8     prazosin.

9          THE COURT:  And have you been taking all three

10    medications during your detention?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And so in that period of time when you've

13    been taking those three pieces of medication, has taking those

14    medications made it harder for you to think or understand

15    things?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  So for example, while you've been taking

18    this medication and suffering from these four conditions, when

19    you've talked to your lawyer about the case, have you been able

20    to understand what she's saying?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Have you been able to put questions

23    together to ask her if you have questions?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Okay.  And so anything else that you're

1   taking in terms of medications other than those three meds that

2   you just mentioned?

3           THE DEFENDANT:  No, sir.

4           THE COURT:  Okay.  Ms. Dolgosheeva, what's your

5   opinion as to Mr. McGraw's competency to plead guilty?

6           MS. DOLGOSHEEVA:  Your Honor, I believe he's

7   absolutely competent.

8           THE COURT:  Okay.  And let me also just make sure,

9   Mr. McGraw, I understand you're in detention but I do need to

10  still ask, are you under the influence of alcohol right now?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Okay.  Or any other controlled substance

13  other than all of those medications that you've mentioned for

14  your physical and mental problems?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Okay.  All right.  Mr. Arce?

17          MR. ARCE:  Judge, based on this allocution here today,

18  I have no reasons to doubt Mr. McGraw's competency.

19          THE COURT:  All right.  And Mr. Stone did not relate

20  to you any concerns either?

21          MR. ARCE:  He did not, your Honor.

22          THE COURT:  Okay.  I do find Mr. McGraw competent to

23  enter a plea of guilty.  He's clearly understood all the

24  questions I've asked him.  He does suffer from some mental

25  conditions, but he's been taking medications for those and,

1    just as importantly, has been able to understand and think

2    through ideas about the case in consultation with his lawyer.

3            All right.  Let's make sure you understand the nature

4    of the charge to which you propose to plead guilty.  And first

5    off, I want to make sure that you did receive a copy of the

6    indictment in the case.  That is the document that had the

7    charge in it.  Do you remember that?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Okay.  And have you fully discussed this

10   charge with your lawyer, Ms. Dolgosheeva?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  And have you told her everything you know

13   about the case?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  The charge to which you propose to plead

16   guilty, it's sometimes called a felon in possession charge.

17   What the government would have to prove is that you, first,

18   knowingly possessed a firearm and then, second, when you

19   possessed that firearm, you had already been convicted of a

20   previous felony; and when you possessed that firearm, you knew

21   that you had been convicted of a felony; and then lastly that

22   the firearm had to have some kind of effect on interstate

23   commerce which for our purposes just simply means that that

24   firearm passed across state lines at some point.

25           So do you understand all of the elements or things

1  that the government would have to prove to show you guilty of

2  this particular charge?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  And you discussed the elements of the

5  offense with your lawyer, Ms. Dolgosheeva?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  Are you satisfied with the efforts that

8  defense counsel has made on your behalf?

9         THE DEFENDANT:  Yes, sir.

10         THE COURT:  And does that include the advice and

11  discussions she had with you with regard to entering into this

12  plea declaration?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  So for example, has she spent enough time

15  with you?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And then we touched on this earlier, but

18  when you asked questions, did she at least try to answer them?

19         THE DEFENDANT:  Yeah, all of them.

20         THE COURT:  Okay.  All right.  Now, I'm going to just

21  turn to this plea declaration that we were provided, Page 8.

22  It's a signature page.  Is that your signature up here,

23  Mr. McGraw?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  All right.  And did you read this plea

1    declaration before you signed it?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Do you understand the terms of this plea

4    declaration?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Does -- well, so this plea declaration

7    means that you have no agreements with the government.  Do you

8    understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  And do you have any understandings or

11   agreements with the government?

12           THE DEFENDANT:  Do I have any understanding?

13           THE COURT:  Yeah.

14           THE DEFENDANT:  Yeah, I understand that I possessed

15   the weapon.

16           THE COURT:  Okay.  No, but like with the government,

17   have they told you any kind of promise or assurance about this

18   case?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Okay.  And then, Ms. Dolgosheeva, let me

21   just confirm that the government has not given you or your

22   client any promise or assurance about this case or the plea.

23           MS. DOLGOSHEEVA:  That is correct, your Honor.

24           THE COURT:  Okay.  And is that correct, Mr. Arce?

25           MR. ARCE:  That's my understanding, your Honor.

1    THE COURT:  All right.  Now, the -- this plea

2  declaration, has anyone threatened you or your children or your

3  family or friends or anyone in order to force you to sign this

4  plea declaration?

5    THE DEFENDANT:  No, sir.

6    THE COURT:  Okay.  So later on when you enter a plea

7  of guilty, will you be pleading guilty of your own free will

8  because you are guilty?

9    THE DEFENDANT:  Yes, sir.

10    THE COURT:  Now, one thing that I -- so I just covered

11  with Ms. Dolgosheeva at the beginning of the hearing is that by

12  entering into this plea of guilty without an agreement from the

13  government, this plea declaration, this means that you cannot

14  challenge on appeal any of the decisions that the Court has

15  made up to this point.  Do you understand that?

16    THE DEFENDANT:  Yes, sir.

17    THE COURT:  All right.  So that means, for example,

18  the Second Amendment motion that you filed and that I denied,

19  you would not be able to challenge that on appeal.  Do you

20  understand that?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  Okay.  And then with regard to the

23  potential penalties, I'm going to actually ask the government

24  to state what it believes are the maximum penalties for this

25  offense.

1          Mr. Arce?

2          MR. ARCE:  Yes, your Honor.  The maximum penalty for

3     the 922(g)(1) charge would be 15 years' imprisonment, a maximum

4     fine of $250,000, a maximum term of supervised release of three

5     years, and a special assessment of $100.

6          THE COURT:  Okay.  So do you understand, Mr. McGraw,

7     what the maximum penalties are for this kind of offense?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And Mr. Arce mentioned supervised release.

10    In the federal system, after someone serves a term of

11    imprisonment, they very often also serve a term of supervised

12    release.  The defendant is no longer in prison, but he is under

13    the supervision of the court, and there's all these conditions

14    that the defendant must follow.  And I would impose the

15    conditions at sentencing.

16          If a condition of supervised release is violated, then

17    the government can come back in to court and ask for supervised

18    release to be revoked or taken away, and the defendant would go

19    back into prison if I so decide.

20          So do you understand what is supervised release in the

21    federal system?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Now, of course, as I sit here today, I

24    don't know what the sentence will be.  We'll have a sentencing

25    hearing in a couple of months.  You and your lawyer will be

1    able to file things in writing before the sentencing hearing.

2    You'll be able to then make arguments at the sentencing of what

3    the sentence ought to be.

4          But do you understand that if I choose a sentence that

5    is higher than what you and your lawyer propose, that would not

6    be a basis to withdraw or take back the plea of guilty.  Do you

7    understand that?

8          THE DEFENDANT:  No.

9          THE COURT:  Yeah, let me try that again.  So you do

10   understand that we're not doing the sentencing today.

11         THE DEFENDANT:  Yes.

12         THE COURT:  And in a few months, we'll have the

13   sentencing hearing.  Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  At the sentencing hearing, both you and

16   the government will get to propose whatever sentence you think

17   is appropriate under the law.  Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Now, if I pick a sentence that is higher

20   than what you and Ms. Dolgosheeva propose, that's not a reason

21   to withdraw or take back the plea of guilty.  Do you understand

22   that?

23         THE DEFENDANT:  Yes.  Now I do.

24         THE COURT:  All right.  Okay.  So any questions about

25   that?

1   THE DEFENDANT:  What will be reasons that I could take

2   it back?

3   THE COURT:  So to -- once you enter the plea of

4   guilty, which is completely up to you, at the end of this

5   hearing if you do enter the plea of guilty, then under criminal

6   Rule 11, the only bases to take back the plea of guilty would

7   be if it was in the, quote, interest of justice.  And what --

8   obviously, that's a very broad phrase, but it actually is

9   pretty narrow grounds.

10  Like, so, for example, if it turned out that you

11  actually are not competent to plead guilty despite your

12  appearances and what you've said today, then that might be a

13  basis to withdraw.  If you got somehow bad advice from your

14  lawyer that is, like, just unreasonable advice, then that might

15  be a basis to withdraw.

16  So I can't spell them all out because it's a standard

17  that's pretty broad, but the grounds are pretty narrow.  Okay.

18  Do you understand that?

19  THE DEFENDANT:  Yes.

20  THE COURT:  Okay.  But for sure, it would not be a

21  reason to withdraw if you propose a sentence down here and I

22  pick one up here, all right, so one that's higher than what you

23  propose.

24  Do you understand that is not a reason to withdraw

25  your plea of guilty?

1        THE DEFENDANT:  Yes.

2        THE COURT:  All right.  Now, similar to that, I would

3  have to consider all the goals and factors of sentencing that

4  you can find in a law at Title 18, United States Code Section

5  3553(a).  So you understand I will have to consider all those

6  goals and factors?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Okay.  So and did you talk to your lawyer

9  about Section 3553(a), all the goals and factors of sentencing?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  One of those factors is the United States

12  Sentencing Guidelines.  The guidelines are a set of rules by

13  which at every sentencing, I calculate two numbers.  The first

14  one is called the offense level.  Not surprisingly, I look at

15  the offense, like, what kind of offense was it.  And then I

16  look at certain facts about the offense; in firearms cases, for

17  example, how many firearms were involved and was the serial

18  number obliterated and so on.  So that's the offense level.

19        Then I also have to calculate the criminal history

20  category by looking at the defendant's criminal history.  And

21  the criminal history categories go from I through VI.  There's

22  a table, the sentencing guidelines table, where I go down one

23  side for the offense level, then I stop.  And then I start

24  going across the table for the criminal history category.  And

25  then in that spot in the table, that's the advice of the

1   guidelines on what the sentence should be.  It doesn't bind the

2   Court.  I do need to consider its advice.

3           Do you understand what the sentencing guidelines are?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Do you understand I will have to calculate

6   them and consider them at sentencing?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Now, similar to the sentence, if I

9   calculate a sentencing guidelines range in that table that is

10  higher than what you and your lawyer propose, again, that's not

11  a reason to withdraw or take back the plea of guilty.  Do you

12  understand that?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  Okay.  All right.  Let's make sure then --

15  oh, before I move on to all the rights you'll be giving up by

16  pleading guilty, on forfeiture, is it the defendant's intention

17  to challenge forfeiture?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  Okay.  So let me just go through this with

20  Mr. McGraw as well.  If you remember, in the indictment there

21  was the charge for being -- having been convicted of a felony

22  and possessing a firearm.  There was another page to the

23  indictment which is called forfeiture.  And what that means is

24  that the government is seeking to extinguish any interest you

25  might have in owning or possessing the gun and the ammunition

1    that is charged in the indictment.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  So that's what forfeiture is.  You

5    give up all your interest in the firearm or ammunition.

6              So do you understand that by entering a plea of

7    guilty, then the gun and ammunition would be subject to

8    forfeiture?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  And you understand that you do have

11   a right actually to have a jury decide whether you should give

12   up the interest in the firearm.

13             And so are you waiving or giving up that right to have

14   a jury decide forfeiture?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Okay.  Now, let's move on to all the other

17   rights that you'd be giving up by pleading guilty.  First and

18   foremost, you understand you do have a right to continue to

19   plead not guilty and insist on a trial.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And if you wanted a jury trial then, of

23   course, we would hold a jury trial for you.

24             Do you understand your right to a trial by jury?

25             THE DEFENDANT:  Yes.

1       THE COURT:  At any kind of trial, it would be the

2  government that bears the burden of proving that you are guilty

3  beyond a reasonable doubt.

4       So do you understand that the government bears the

5  burden and that the burden is proof beyond a reasonable doubt?

6       THE DEFENDANT:  Yes.

7       THE COURT:  At any trial you would also have the right

8  to the assistance of a lawyer.  And if you continue to not be

9  able to afford a lawyer, then I would continue to appoint one

10  for you free of charge.

11       So do you understand your right to the assistance of a

12  lawyer?

13       THE DEFENDANT:  Yes.

14       THE COURT:  The lawyer would help you before the

15  trial, during the trial, and all the points after the trial.

16       So do you understand that the lawyer would help you at

17  all phases of the trial?

18       THE DEFENDANT:  Yes, sir.

19       THE COURT:  You also would have a right to see and

20  hear all of the government's witnesses against you.  They would

21  have to physically walk into the courtroom.  They would sit

22  right there at the witness stand.  And not only would you have

23  a right to hear their testimony against you, you through your

24  lawyer could ask them questions under oath through what we call

25  cross-examination.

1          So do you understand your right to see, hear, and

2     question all of the government's witnesses against you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  You would also have the right to introduce

5     evidence.  And if you needed the power of the court to gather

6     evidence before trial or you needed the power of the court to

7     require a witness to come and testify for you, then your lawyer

8     could issue what we call subpoenas which is just another term

9     for court orders that require the production of evidence to you

10    or to show up at trial to testify for you.

11         So do you understand your right to gather evidence and

12    put on testimony and evidence at trial through the power of

13    subpoenas?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, there is one person that no one can

16    force to testify, and that person is you.  You have the

17    absolute right to not testify, and if you decided to not

18    testify, I would instruct the jury that they could take no hint

19    or suggestion of guilt just because you decided to not testify.

20         So do you understand your right to not testify?

21         THE DEFENDANT:  Yes.

22         THE COURT:  The opposite side of that coin is that you

23    have the absolute right to testify.  No one can stop you from

24    testifying, not your lawyer, not the government.  I could not

25    stop you from testifying.

1          So do you understand that you would have also had the

2    absolute right to testify?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  In the federal system, it is possible to

5    have what we call a bench trial where instead of the jury

6    deciding whether you are guilty or not guilty, I would decide,

7    the Court would decide whether you are guilty or not guilty.

8    However, in the federal system, in order to hold a bench trial,

9    you would have to first agree to it, the government would then

10   also have to agree to it, and then lastly I would have to agree

11   to hold a bench trial.

12         But do you understand that there was at least a

13   possibility of a bench trial?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Okay.  Let's go back to jury trials

16   because you would have the absolute right to have a jury trial

17   if you wanted one.  And you would also have the right to

18   participate in picking the jury.  The jury would be composed of

19   12 individuals who are eligible to serve.  We would pick them

20   by calling in a few dozen individuals who are eligible to

21   serve, and we'd ask them questions to see if they could fairly

22   sit in judgment of you.

23         And then there would be two ways for you to stop

24   someone from sitting on the jury.  First, if you can convince

25   me through your lawyer that a particular potential juror could

1    not fairly sit in judgment of you, I would not let that person

2    sit on the jury.

3           And then second, in a case like this, you would have

4    11 peremptory challenges where you could just pick 11

5    individuals that you don't want to serve on the jury, and you

6    would not even have to explain why.  I would just not put those

7    people on the jury.

8           So do you understand your right to participate in that

9    jury selection procedure?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  If after you -- after we had picked the

12   jury and they had heard all the evidence as well as the

13   arguments of the lawyers, then in order to return a verdict,

14   meaning in order to decide the case, all 12 of them would have

15   to be unanimous on the verdict.

16          So do you understand your right to a unanimous jury

17   verdict?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Okay.  Lastly, if you were to go to trial

20   and if you had been convicted, then you would have a right to

21   appeal from all the mistakes made before the trial, all the

22   mistakes during the trial, all the mistakes after the trial.

23          So do you understand that as part of your trial right,

24   you also would have had a right to appeal from any mistakes

25   made at this trial level?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  Having heard all of those rights

3    that you would be giving up by pleading guilty, is it still

4    your intention to plead guilty?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  Then I'm going to ask

7    Ms. Dolgosheeva to set forth in summary what would be the

8    factual basis for the plea.  And I do want you to listen

9    carefully, Mr. McGraw, because at the end of this summary that

10   she's going to read into the record, I will turn back to you,

11   and I'm going to ask you whether you disagree with any of the

12   facts and whether you agree with the summary.

13         All right.  Ms. Dolgosheeva?

14         MS. DOLGOSHEEVA:  On or about July 14, 2022,

15   Mr. McGraw carried a firearm in Calumet City which is located

16   in this district, the Northern District of Illinois, Eastern

17   Division.  At the time of possession of the firearm, Mr. McGraw

18   knew that he had previously been convicted of crimes punishable

19   by a term of imprisonment exceeding one year, specifically,

20   reckless discharge of a firearm and conspiracy to commit

21   murder.

22         The firearm that Mr. McGraw had on his person was a

23   Glock 45 .9 millimeter semiautomatic pistol serial No. BHYZ683.

24   Mr. McGraw knowingly possessed this firearm.  Mr. McGraw

25   acknowledges that this firearm had traveled in interstate and

1    foreign commerce prior to his possession of said firearm.

2           THE COURT:  Okay.  Mr. McGraw, are those facts true?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Do you disagree with any of the facts just

5    stated?

6           THE DEFENDANT:  No.

7           THE COURT:  All right.  Then how do you plead to the

8    sole count of the indictment which is felon in possession of a

9    firearm:  Guilty or not guilty?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  It's the judgment of the Court that the

12   defendant is mentally competent to enter a plea of guilty.  He

13   understands the charge.  He understands what the maximum

14   penalties are.  He's had the assistance of counsel.  The plea

15   is knowing and voluntary, and there is a factual basis for the

16   plea.  So I'll accept the plea and enter a finding of guilt.

17          Let's set a sentencing date.

18          THE CLERK:  December 17 at 12:30.

19          THE COURT:  All right.  And the minute entry will have

20   deadlines for the sentencing memoranda.

21          Okay.  Is there anything else for the government?

22          MR. ARCE:  No, your Honor.  Thank you.

23          THE COURT:  And for the defense?

24          MS. DOLGOSHEEVA:  Your Honor, just a question.  Given

25   that the parties disagree about the base offense level and the

1   two enhancements, would it make sense to set a reply date as

2   well?  It's the government's burden of proof, the base offense

3   level as well as the enhancements.

4           THE COURT:  Yeah, there's going to be cross-responses

5   which I think might be enough.  Yeah, so, I mean, you ought

6   to -- you probably have a pretty good idea in plea negotiations

7   where the government is going to come from, so you can include

8   some of that argument in your opening brief.  And then you'll

9   see the government's opening brief, and they'll see yours, and

10  then there will be cross-responses.

11          So I think that should take care of it.

12          MS. DOLGOSHEEVA:  Thank you, Judge.  So your Honor

13  anticipates, and I'm going to ask Mr. Arce, would the

14  government be filing a sentencing memo instead of a response

15  because sometimes the government files a sentencing memo on the

16  sentencing memo deadline, and sometimes the government just

17  files a response to my sentencing.

18          THE COURT:  No, I would expect a sentencing memo from

19  both parties, an opening sentencing memo and then

20  cross-responses.

21          MR. ARCE:  That's my understanding as well, Judge.

22          THE COURT:  Okay.

23          MR. ARCE:  And December 17th, I anticipate covering

24  the sentencing hearing.  Mr. Stone will start an extended leave

25  soon.  I have a trial that starts December 16th, and I'm

1    wondering if it's possible to move the sentencing up just a

2    couple of days to December 13th if that works for your Honor.

3              THE COURT:  Is that too close to --

4              THE CLERK:  It's earlier.

5              THE COURT:  It's earlier than the probation time?

6              MR. ARCE:  Oh, that's right.

7              THE COURT:  So let me -- and how long is your trial?

8              MR. ARCE:  I anticipate it lasting just that week.  I

9    don't think it would bleed into the next week.  I certainly

10   hope not.

11             THE COURT:  Okay.  Are you around the 23rd?

12             MR. ARCE:  Yes.  I don't anticipate traveling for the

13   holidays.

14             THE COURT:  Ms. Dolgosheeva?

15             MS. DOLGOSHEEVA:  I'm available.

16             THE COURT:  Okay.  Let's set it for the 23rd at, we'll

17   do it at 10:00 a.m.  It was the noon hour because I am on trial

18   through the 20th, but this might make a little bit more sense

19   because if there's an evidentiary hearing involved, it will be

20   better to do it at 10:00 instead of during the lunch hour at a

21   trial.

22             So December 23rd at 10:00 a.m.  Okay.  Thanks.

23             MR. ARCE:  Thank you, Judge.

24             MS. DOLGOSHEEVA:  Thank you, your Honor.

25     (Proceedings adjourned at 11:02 a.m.)

1                           *   *   *   *   *

2          I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4     /s/Judith A. Walsh                    March 15, 2025

5     Judith A. Walsh, CSR, RDR, F/CRR              Date

6     Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25